### 46513. HEWATT et al. v. LEPPERT.
#### (376 SE2d 883)

GREGORY, Justice.

In June 1985, the appellee, Alfred Leppert, rented premises to the appellants, Marvin Hewatt and Cousins' Food Stores, Inc. The lease expired on June 30, 1988. At issue is a clause in the lease that said:

> In the event that Landlord desires to sell or lease the premises . . . and receives an acceptable offer during the lease, or any renewals thereof, Tenant shall have the opportunity to match the conditions of the offer and to purchase or lease the premises. . . .

On May 17, 1988, the appellee-landlord notified the appellant-tenant that he had listed the property for sale and was asking an all-cash price of $450,000. The tenant said he was not interested in buying at that price because it was too high.

On May 23, 1988, the landlord entered into an option contract with Amoco Oil Company. Under the agreement the landlord granted Amoco the option of purchasing the premises for $450,000 until September 19, 1988.

The landlord did not tell the tenant about the option contract but the tenant learned about it in early June. In August 1988, after his lease had expired, the tenant told the landlord that he wanted to purchase the property.

In September 1988, the tenant filed a complaint in Fulton Superior Court. The tenant sought an injunction prohibiting the landlord from selling the property to anyone else. The tenant also alleged that the landlord should be required to specifically perform his contractual obligation to offer him the opportunity to buy the property on the terms contained in the option agreement with Amoco.

In his motion for summary judgment, the landlord argued first, that the tenant could not exercise his right of first refusal because the landlord had not received an acceptable offer and second, that even if the tenant did have a right of first refusal he exercised it when he declined to buy the property before the landlord entered into the option contract. On October 18, 1988, the trial court granted summary judgment for the landlord.

The clause in this lease gave the tenant a right of first refusal and obligated the landlord to give the tenant an opportunity to match the

conditions of a third party's "acceptable offer." The issue becomes: Did the landlord breach a contractual duty to the tenant when he entered into the option contract with Amoco?

When a lease contains a right of first refusal clause the landlord "is under a legal duty to [the tenant] *not to sell* to anybody at any price until after he has made an offer to sell to [the tenant] at that price and [the tenant] has failed to accept it." 1A Corbin on Contracts, § 261 at p. 471 (1963). The tenant has a right that "[the landlord's] first offer shall be an offer to [the tenant]." Id.

The right of first refusal clause in this case gave the tenant an opportunity to "match the conditions of the offer" if the landlord wanted "to sell or lease the premises" and had "receive[d] an acceptable offer." The landlord had no obligation to try to sell the property. But if the landlord had wanted to sell the premises and had received an acceptable offer from a third party, he had to give the tenant an opportunity to match it. If the landlord had received an acceptable offer from Amoco and had sold the property to the corporation without first giving the tenant an opportunity to match the offer, then the landlord would have breached his contract with the tenant.

The landlord is correct when he argues that because he did not *receive* an acceptable offer from Amoco, the tenant's right of first refusal never ripened into a right to match an acceptable offer. In that sense the landlord did not breach his contract. But the landlord did breach his contract with the tenant when he executed the option contract with Amoco because the option contract diminished the value of the tenant's right of first refusal.

In an option contract the offeror accepts consideration in exchange for his promise to keep the offer open. In this case, Amoco gave the landlord consideration in exchange for the landlord's promise to keep open for a stated time his offer to sell the premises for $450,000. Amoco had no obligation to purchase the property, but the landlord could not offer to sell the property to anyone else because he had made an irrevocable offer to sell the property to Amoco if the corporation wanted to buy it. 1 Restatement (2d) of Contracts, § 25 (1981).

By making an irrevocable offer to sell to Amoco, the landlord put the power to buy entirely in the hands of Amoco. In his affidavit the landlord stated that Amoco wanted the option so he would remove the property from the market and the corporation could decide whether it wanted to buy. In effect, Amoco wanted to prevent anyone else from buying the property until Amoco could make a decision.

The landlord breached his contract with the tenant because the option contract circumvents the landlord's promise to the tenant. During the life of the option, the landlord would almost certainly not solicit other acceptable offers because if he had received an "accept-

able offer" and sold to the tenant at that price, he would have breached his promise to Amoco not to accept an offer from anyone else. Although the landlord had no duty to solicit offers, he could not sell the property in a manner that deprived the tenant of his right to match an acceptable offer.

The landlord has also argued it was sufficient that he offered to sell the property to the tenant before entering into the option contract. We disagree. The parties intended that if the landlord wanted to sell to a third party at an acceptable price, then the tenant would have the opportunity to match the offer. In this case the landlord never received an acceptable offer because he executed the option contract with Amoco.

The holder of an option can compel a sale by an unwilling owner. The holder of the right of first refusal in this case was merely given the opportunity to buy if the landlord received an acceptable offer. *Shiver v. Benton*, 251 Ga. 284, 285 (304 SE2d 903) (1983). When the landlord gave Amoco the power to accept his irrevocable offer, the tenant was deprived of his opportunity to match an acceptable offer the landlord might otherwise have received.

The essence of the tenant's right of first refusal was the *possibility* of matching a third party's acceptable offer. The tenant had the right to turn down the landlord's initial offer, hoping that the landlord would have had the property on the market so long that a lower offer from a third party would have become "acceptable" to him. The landlord destroyed this possibility when he executed the option contract with Amoco and thus diminished the value of the tenant's right of first refusal.

We point out that while the issue in this case is similar to the issue in our recent decision, *Hasty v. Health Service Centers*, 258 Ga. 625 (373 SE2d 356) (1988), the facts are different. In *Hasty* we held that the tenant's right of first refusal was triggered when the landlord executed an option with a third party; in the present case we hold that the landlord breached his contract with the tenant when he substantially diminished the value of the right of first refusal by executing the option and thereby eliminating the possibility that he would receive an acceptable offer from a party other than Amoco.

The results of the two cases are different because the language of the first refusal clauses is different. In *Hasty*, the right of first refusal clause specified that the tenant would have the right to buy the premises if the landlord wanted to sell "whether resulting from an offer to purchase . . . received by the Lessor or otherwise. . . ." 258 Ga. at 625. In the present case, the parties had agreed that the right of first refusal would be triggered only when the landlord received an acceptable offer. Thus, in *Hasty*, the right of first refusal was triggered when the landlord executed the option contract. He never received an offer

but the parties had agreed that the right of first refusal would be triggered when the landlord "otherwise" wanted to sell.

In the present case the option contract did not trigger the right of first refusal because the parties had not agreed that it would. They agreed that only an acceptable offer the landlord received would trigger the right of first refusal. When the landlord diminished the value of the right of first refusal, he breached his contract with the tenant even though he did not trigger the right of first refusal.

Because we hold that the landlord breached his contractual duty to the tenant under the right of first refusal clause, we reverse the granting of summary judgment for the landlord.

*Judgment reversed. All the Justices concur, except Marshall, C. J., not participating.*

DECIDED MARCH 8, 1989 —
RECONSIDERATION DENIED MARCH 29, 1989.

*Dailey & Groover, Lewis M. Groover, Jr.,* for appellants.
*Peterson, Young, Self & Asselin, R. Harold Meeks, Jr.,* for appellee.